# Exhibit A

## Settlement Agreement

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | | |
|---|---|---|
| **CORBIN HOWARD, on behalf of himself and others similarly situated,** | ) | Case No. 3:21-cv-38 |
| | ) | |
| Plaintiff, | ) | Judge Richard L. Young |
| | ) | Magistrate Judge Matthew P. Brookman |
| v. | ) | |
| | ) | <u>**SETTLEMENT AGREEMENT AND**</u> |
| **BERRY GLOBAL, INC.,** | ) | <u>**RELEASE**</u> |
| | ) | |
| Defendant. | ) | |

NAMED PLAINTIFF Corbin J. Howard (on behalf of himself and OPT-IN PLAINTIFFS, collectively "PLAINTIFFS" or the "FLSA SETTLEMENT COLLECTIVE") and DEFENDANT Berry Global, Inc. enter into this SETTLEMENT AGREEMENT AND RELEASE ("SETTLEMENT AGREEMENT").[1]

**I.      RECITALS AND BACKGROUND**

A.      On February 24, 2021, NAMED PLAINTIFF commenced this LITIGATION by filing a COMPLAINT in the United States District Court for the Southern District of Indiana, Case No. 3:21-cv-38, (the "LITIGATION").  [See ECF No. 1.] In the Complaint, NAMED PLAINTIFF asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), on behalf of himself and other individuals who were or had been employed by DEFENDANT as hourly-paid manufacturing employees at its manufacturing facilities in the United States and who were similarly subjected to timecard rounding practices and policies

---

[1] Terms that appear in all caps are defined terms.  The definitions for these terms are contained in the Appendix to this SETTLEMENT AGREEMENT.

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

which allegedly resulted in the systematic failure to pay employees all earned overtime compensation. [See ECF No. 1.] More specifically, NAMED PLAINTIFF alleged that DEFENDANT programmed timekeeping and payroll software and created disciplinary rules which combined to create a non-neutral rounding practice where work time entries were only rounded in its favor and always to its employees' disadvantage. The COMPLAINT was filed as a purported collective action under 29 U.S.C. § 216(b).

B. Between February 24 and May 28, 2021, PLAINTIFFS' COUNSEL filed consents to join the proposed collective action completed by NAMED PLAINTIFF and 21 putative collective members ("EARLY OPT-IN PLAINTIFFS"). [See ECF Nos. 3, 12-15, 17-18, 20-22, 26, 30-31, 34, 36.]

C. At the request of the PARTIES, the COURT entered an order directing the PARTIES to engage in private mediation by September 10, 2021, and extended DEFENDANT'S time to answer or otherwise respond to the COMPLAINT until October 11, 2021. [See ECF Nos. 33, 35.]

D. On June 9, 2021, the PARTIES fully executed a Confidential Mediation Agreement. As part of that agreement, DEFENDANT agreed to stipulate to conditional certification with respect to individuals who worked in hourly manufacturing positions at 87 U.S. plants or warehouses during the previous two years. The PARTIES agreed to a 45-day notice period and to select RG/2, LLC as the third-party administrator ("NOTICE ADMINISTRATOR") to administer the notice process. The PARTIES agreed to production of DEFENDANT's relevant time and pay data for NAMED PLAINTIFF and any OPT-IN PLAINTIFFS, and to an exchange of mediation statements and damages analysis prior to

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

mediation.  The PARTIES also agreed to the selection of Hunter Hughes ("MEDIATOR"), an experienced and highly respected class and collective action mediator, and to two (2) mediation sessions scheduled approximately seven (7) calendar days apart.

E.    On June 11, 2021, the PARTIES filed their Joint Motion for an Order Approving Stipulation of Conditional Certification. [See ECF No. 37.]  On June 15, 2021, District Judge Young entered an order approving the stipulation and the appointment of RG/2, LLC as the NOTICE ADMINISTRATOR. [See ECF No. 38.]

F.    The collective notice list was transmitted to the NOTICE ADMINISTRATOR on June 29, 2021, and notice was sent out to 22,489 putative collective members on July 20, 2021. [See ECF No. 39.]  The OPT-IN NOTICE PERIOD ended on September 3, 2021.

G.    On July 30, 2021, the Court vacated the deadline to engage in mediation, ordered the MEDIATOR to file a report with the Court by October 27, 2021, and extended DEFENDANT's time to answer or otherwise respond to the Complaint until November 19, 2021. [See ECF No. 40.]  The PARTIES agree that in light of this agreement, it is not necessary for DEFENDANT to answer or otherwise respond to the COMPLAINT.

H.    In late August 2021, DEFENDANT discovered that 476 putative collective members had been inadvertently left off the list of individuals eligible to receive notice. This group only worked for DEFENDANT during the period July 2019 to December 2019 at 15 plants that had been acquired by DEFENDANT in July 2019.  The PARTIES agreed to issue notice to these individuals, with the same notice period length (45 days) afforded to those who received notice on July 20, 2021.  The supplemental notice went out on September 9, 2021, and the SUPPLEMENTAL OPT-IN NOTICE PERIOD closed on October 25, 2021.

**<u>FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY</u>**

I.        As a result of the original notice mailing, 1,633 individuals submitted consent forms to the NOTICE ADMINISTRATOR.  The PARTIES agreed to accept all late-filed consent forms from the original notice mailing up through the date of the execution of the SETTLEMENT AGREEMENT, with the limitations period tolled for such individuals as of the date their consent forms were received by the NOTICE ADMINISTRATOR.  The number of accepted untimely consent forms from the original notice mailing is 50.

J.        As a result of the supplemental notice mailing, 32 individuals submitted consent forms to the NOTICE ADMINISTRATOR.  The PARTIES agreed to accept all late-filed consent forms from the supplemental notice mailing up through the date of the execution of the SETTLEMENT AGREEMENT, with the limitations period tolled for such individuals as of the date their consent forms were received by the NOTICE ADMINISTRATOR.  The number of accepted untimely consent forms from the supplemental notice mailing is 5.

K.        On October 12, 2021, the PARTIES' counsel met in-person with MEDIATOR Hunter Hughes in Atlanta, Georgia.  During the mediation, the PARTIES exchanged multiple offers regarding the MAXIMUM GROSS SETTLEMENT AMOUNT and other key terms and conditions of settlement.  The PARTIES reached a tentative agreement on certain key terms and conditions, subject to reaching final agreement on the terms of a formal written Settlement Agreement and Release.  At the mediation, PLAINTIFFS' COUNSEL, DEFENDANT'S COUNSEL, and DEFENDANT executed a SUMMARY OF CERTAIN TERMS OF PROPOSED SETTLEMENT memorializing their tentative agreement subject to Court approval.  NAMED PLAINTIFF signed the SUMMARY OF CERTAIN TERMS

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

OF PROPOSED SETTLEMENT on October 13, 2021.

      L.     Between October 12 and December 13, 2021, the PARTIES exchanged drafts of the SETTLEMENT AGREEMENT and the PLAINTIFFS' motion for approval of the SETTLEMENT AGREEMENT.

      M.     It is the desire and intention of the PARTIES that this SETTLEMENT AGREEMENT shall, for NAMED PLAINTIFF and each OPT-IN PLAINTIFF, fully, finally, and forever completely settle, compromise, release, and discharge any and all RELEASED CLAIMS.

      N.     PLAINTIFFS' COUNSEL has conducted a thorough investigation of NAMED PLAINTIFF'S CLAIMS asserted against DEFENDANT in the LITIGATION and/or that relate to or could have arisen out of the same facts alleged in the LITIGATION or relating to the employment of the NAMED PLAINTIFF and OPT-IN PLAINTIFFS, including both asserted and unasserted claims.  Based on their independent investigation and evaluation, including expert analysis of pay and time data and interviews of their clients, PLAINTIFFS' COUNSEL believe that the settlement of the RELEASED CLAIMS with DEFENDANT for the consideration and on the terms set forth in this SETTLEMENT AGREEMENT is fair, reasonable, and adequate, and is in the best interest of NAMED PLAINTIFF and OPT-IN PLAINTIFFS in light of all known facts and circumstances, including the risk of delay, defenses that may be asserted by DEFENDANT in response to the NAMED PLAINTIFF'S CLAIMS, and numerous potential certification, decertification, litigation, and appellate issues relating to the NAMED PLAINTIFF'S CLAIMS.

      O.     RELEASED PERSONS expressly deny any liability or wrongdoing of any kind

## FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY

associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this LITIGATION and NAMED PLAINTIFF'S CLAIMS in the COMPLAINT.  RELEASED PERSONS contend they have complied with all applicable federal and state laws at all times.  By entering into the SETTLEMENT AGREEMENT, DEFENDANT does not admit any liability or wrongdoing and expressly denies the same.  It is expressly understood and agreed by the PARTIES that the SETTLEMENT AGREEMENT is being entered into by DEFENDANT solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the RELEASED CLAIMS on the terms set forth herein.  Nothing in the SETTLEMENT AGREEMENT, the settlement proposals and mediation statements exchanged by the PARTIES, or any motions filed or Orders entered pursuant to the SETTLEMENT AGREEMENT, may be construed or deemed as an admission by RELEASED PERSONS of any liability, culpability, negligence, or wrongdoing, including that NAMED PLAINTIFF or any OPT-IN PLAINTIFF was not properly paid for all time worked. The SETTLEMENT AGREEMENT, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the SETTLEMENT AGREEMENT.  Furthermore, neither the SETTLEMENT AGREEMENT, any motions filed, information and/or documents exchanged by the PARTIES in preparation for the mediation, settlement proposals exchanged by the PARTIES, nor Orders entered pursuant to the SETTLEMENT AGREEMENT, shall constitute an admission, finding, or evidence that any requirement for representative litigation or collective/class certification

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

has been satisfied in this LITIGATION or any other action, except for the limited settlement purposes set forth in this SETTLEMENT AGREEMENT.

P.     The PARTIES shall request the COURT approve, administer, and implement the SETTLEMENT AGREEMENT with respect to those actions and claims settled in this SETTLEMENT AGREEMENT.

Q.     DEFENDANT does not waive, and instead expressly reserves its rights to challenge the propriety of collective action certification for any purpose as if this SETTLEMENT AGREEMENT had not been entered into by the PARTIES if the COURT does not approve the SETTLEMENT AGREEMENT or should NAMED PLAINTIFF or DEFENDANT exercise their rights to terminate the SETTLEMENT AGREEMENT in accordance with Section X.

## II.    MAXIMUM GROSS SETTLEMENT AMOUNT

A.     PLAINTIFFS and DEFENDANT have agreed to a MAXIMUM GROSS SETTLEMENT AMOUNT equal to **$775,000.00**, inclusive of all SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS); PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES; MEDIATION EXPENSES as of October 12, 2021; SERVICE PAYMENT; and SETTLEMENT EXPENSES not to exceed **$36,306**. The MAXIMUM GROSS SETTLEMENT AMOUNT does not include EMPLOYER-PAID PAYROLL TAXES.

B.     In no event shall the total distribution and payments made by DEFENDANT, including but not limited to SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS); PLAINTIFFS' COUNSEL'S FEES, COSTS AND

## FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY

EXPENSES, MEDIATION EXPENSES, SERVICE PAYMENT, and SETTLEMENT EXPENSES, exceed the MAXIMUM GROSS SETTLEMENT AMOUNT.

C.    DEFENDANT may not be called upon or required to contribute additional monies above the MAXIMUM GROSS SETTLEMENT AMOUNT under any circumstances.

D.    In the event the SETTLEMENT AGREEMENT is terminated under the provisions of Section X, DEFENDANT shall pay fifty percent (50%) and NAMED PLAINTIFF shall pay fifty percent (50%) of the MEDIATION EXPENSES.

E.    Members of the FLSA SETTLEMENT COLLECTIVE will be responsible for their own tax obligations.  Each member of the FLSA SETTLEMENT COLLECTIVE will bear their own withholding taxes, as determined by such taxing authority of competent jurisdiction and excluding EMPLOYER-PAID PAYROLL TAXES, (*e.g.*, FICA, FUTA) on the back pay (W-2) portion of their SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS), and will be responsible for remitting to State and/or Federal taxing authorities any applicable other taxes due and shall hold DEFENDANT harmless and indemnify RELEASED PERSONS for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority of competent jurisdiction which result from any FLSA SETTLEMENT COLLECTIVE member's failure to remit taxes due, as determined to be owed by the respective FLSA SETTLEMENT COLLECTIVE member by such taxing authority, on payments made to the individual pursuant to the SETTLEMENT AGREEMENT.

F.    The MAXIMUM GROSS SETTLEMENT AMOUNT shall not be segregated and may remain in DEFENDANT'S general funds until provided to the SETTLEMENT

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

ADMINISTRATOR for distribution, as set forth below in Section III(H).

G.      Any amounts that are not distributed to the FLSA SETTLEMENT COLLECTIVE as SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS) or pursuant to PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES; MEDIATION EXPENSES; SERVICE PAYMENT; or SETTLEMENT EXPENSES, shall be remitted to DEFENDANT pursuant to the terms described in Section III(J).

H.      All interest accrued on the MAXIMUM GROSS SETTLEMENT AMOUNT while in a QUALIFIED SETTLEMENT FUND under this SETTLEMENT AGREEMENT will remain DEFENDANT'S sole and exclusive property and shall be remitted to DEFENDANT pursuant to the terms described in Section III(J).

## III.    TERMS OF SETTLEMENT

A.      Within 7 days after the SETTLEMENT AGREEMENT is executed by the NAMED PLAINTIFF (on behalf of himself and the OPT-IN PLAINTIFFS), and DEFENDANT, NAMED PLAINTIFF shall submit this SETTLEMENT AGREEMENT to the COURT and move the COURT for an APPROVAL ORDER and entry of FINAL JUDGMENT and may represent that it is an unopposed motion. As part of the Motion, NAMED PLAINTIFF shall request that the COURT appoint RG/2, LLC as the SETTLEMENT ADMINISTRATOR. PLAINTIFFS' COUNSEL shall include in the unopposed Motion a request for an award of PLAINTIFFS' COUNSEL'S FEES, COSTS, AND EXPENSES consistent with the provisions of the SETTLEMENT AGREEMENT. The deadline set forth above in this section may be extended by mutual agreement of the PARTIES.

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

B.     The PARTIES agree to act in good faith and take reasonable steps necessary to secure an APPROVAL ORDER from the COURT, including as necessary returning to mediation with the MEDIATOR and negotiating in good faith until the MEDIATOR declares an impasse after making at least one MEDIATOR'S proposal.

C.     Within fourteen (14) calendar days after entry of an APPROVAL ORDER, DEFENDANT shall provide the SETTLEMENT ADMINISTRATOR and PLAINTIFFS' COUNSEL with the hire date, termination date (or indicate status as current employee), and last plant worked at, for NAMED PLAINTIFF and OPT-IN PLAINTIFFS for purposes of calculating SETTLEMENT PAYMENTS in accordance with the formula in Section III(E). DEFENDANT shall also provide the SETTLEMENT ADMINISTRATOR with the social security numbers of NAMED PLAINTIFF and the EARLY OPT-IN PLAINTIFFS.

D.     Within fourteen (14) calendar days after entry of an APPROVAL ORDER, PLAINTIFFS' COUNSEL shall provide the SETTLEMENT ADMINISTRATOR with the names, last known addresses and telephone numbers, and date consent form was filed with the Court, of NAMED PLAINTIFF and the EARLY OPT-IN PLAINTIFFS. The PARTIES' COUNSEL shall confer in good faith if the SETTLEMENT ADMINISTRATOR requires any other information that is not already in the possession and control or more readily available to DEFENDANT.

E.     Within fourteen (14) calendar days following its receipt of the information in Sections III(C) and III(D), the SETTLEMENT ADMINISTRATOR shall calculate the SETTLEMENT PAYMENTS for each member of the FLSA SETTLEMENT COLLECTIVE pursuant to the following steps and formula:

**<u>FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY</u>**

1.    Calculate the REVISED MAXIMUM GROSS SETTLEMENT by deducting the amounts approved by the COURT for PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES; the amount approved by the COURT for the SERVICE PAYMENT; SETTLEMENT EXPENSES not to exceed $36,306; and MEDIATION EXPENSES as of October 12, 2021.

2.    The REVISED GROSS SETTLEMENT AMOUNT shall be divided by the aggregate sum of the number of full workweeks of employment during the PAYMENT ELIGIBILITY PERIOD for each FLSA SETTLEMENT COLLECTIVE to calculate a "per week" amount.

3.    For each member of the FLSA SETTLEMENT COLLECTIVE, multiply the "per week" amount by the number of full workweeks in his or her PAYMENT ELIGIBILITY PERIOD to determine that individual's settlement allocation.

4.    For each member of the FLSA SETTLEMENT COLLECTIVE whose settlement allocation calculated above is less than the MINIMUM SETTLEMENT PAYMENT amount, revise their settlement allocation upward to the MINIMUM SETTLEMENT PAYMENT amount.  Re-allocate the remaining funds in the REVISED GROSS SETTLEMENT AMOUNT pro-rata after recalculating the proportions described in Section III(E)(2) above, excluding members of the FLSA SETTLEMENT COLLECTIVE whose settlement allocations were already revised upward to the MINIMUM SETTLEMENT PAYMENT and reducing the funds available for allocation to the other members of the FLSA SETTLEMENT COLLECTIVE by the MINIMUM SETTLEMENT PAYMENT amount for each such excluded member of the FLSA SETTLEMENT COLLECTIVE, in order to calculate

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

a revised settlement allocation for each member of the FLSA SETTLEMENT COLLECTIVE receiving more than the MINIMUM SETTLEMENT PAYMENT amount. This process will be repeated until the individual settlement allocations for all members of the FLSA SETTLEMENT COLLECTIVE are at least the MINIMUM SETTLEMENT PAYMENT amount. When the individual settlement allocations for all members of the FLSA SETTLEMENT COLLECTIVE are at least the MINIMUM SETTLEMENT PAYMENT amount, those individual settlement allocations shall be the SETTLEMENT PAYMENTS for the individual members of the FLSA SETTLEMENT COLLECTIVE. The total of all SETTLEMENT PAYMENTS, including MINIMUM SETTLEMENT PAYMENTS, shall equal the REVISED GROSS SETTLEMENT AMOUNT.

      F.     The SETTLEMENT ADMINISTRATOR shall provide its calculations to PLAINTIFFS' COUNSEL and DEFENDANT'S COUNSEL. The calculations shall identify the NAMED PLAINTIFF and OPT-IN PLAINTIFFS by name, last plant worked at, the date the consent was received by the NOTICE ADMINISTRATOR (or for NAMED PLAINTIFF and EARLY OPT-IN PLAINTIFFS, the date the consent was filed with the COURT), address, telephone number, number of full workweeks in the PAYMENT ELIGIBILITY PERIOD, and the SETTLEMENT PAYMENT amount.

      G.     PLAINTIFFS' COUNSEL and DEFENDANT'S COUNSEL shall have five (5) business days to review, verify, and comment on the calculations provided by the SETTLEMENT ADMINISTRATOR. The SETTLEMENT ADMINISTRATOR shall review any comments received from PLAINTIFFS' COUNSEL and/or DEFENDANT'S COUNSEL and shall finalize the SETTLEMENT PAYMENT calculations within five (5) business days

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

thereafter. The SETTLEMENT ADMINISTRATOR'S determination (after input from PLAINTIFFS' COUNSEL and/or DEFENDANT'S COUNSEL) of the SETTLEMENT PAYMENT amounts (including MINIMUM SETTLEMENT PAYMENTS) for each member of the FLSA SETTLEMENT COLLECTIVE shall be final.

H.      Within ten (10) business days after the FINAL EFFECTIVE DATE, DEFENDANT shall provide the SETTLEMENT ADMINISTRATOR with funds equal to (1) the MAXIMUM GROSS SETTLEMENT AMOUNT less DEFENDANT'S pre-paid share of MEDIATION EXPENSES; and (2) DEFENDANT'S share of EMPLOYER-PAID PAYROLL TAXES related to the SETTLEMENT PAYMENTS (as estimated by the SETTLEMENT ADMINISTRATOR). The funds shall be deposited in a QUALIFIED SETTLEMENT FUND.

I.       Within twenty (20) business days following the later of (1) the date SETTLEMENT PAYMENTS are deemed final by the SETTLEMENT ADMINISTRATOR under Section III(G); or (2) the FINAL EFFECTIVE DATE, the SETTLEMENT ADMINISTRATOR shall mail SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS) to FLSA SETTLEMENT COLLECTIVE members, along with a copy of the APPROVAL ORDER and cover letter substantially in the form attached as Exhibit 1 to the SETTLEMENT AGREEMENT. The SETTLEMENT ADMINISTRATOR shall mail these funds by first-class U.S. mail to the addresses provided by PLAINTIFFS' COUNSEL under Section III(D) for NAMED PLAINTIFF and EARLY OPT-IN PLAINTIFFS, and the addresses provided by other OPT-IN PLAINTIFFS on their consent forms filed with the NOTICE ADMINISTRATOR during the OPT-IN NOTICE PERIOD or SUPPLEMENTAL OPT-IN NOTICE PERIOD. Prior to mailing, the SETTLEMENT

13

## FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY

ADMINISTRATOR shall run all addresses through the National Change of Address (NCOA) database, update such addresses accordingly, and notify COUNSEL for the PARTIES of such updates within seven (7) days.

      J.    Within ten (10) business days after the deadline set forth in Section III(N) for FLSA SETTLEMENT COLLECTIVE members to cash checks, the SETTLEMENT ADMINISTRATOR shall remit to DEFENDANT any interest that accrued on the MAXIMUM GROSS SETTLEMENT AMOUNT while in the QUALIFIED SETTLEMENT FUND, plus (1) any portion of the REVISED GROSS SETTLEMENT AMOUNT not cashed within the time period set forth in Section III(N) below and not escheated to a state agency as required by law under Section III(N); and (2) any excess deposit of DEFENDANT'S share of EMPLOYER-PAID PAYROLL TAXES related to the SETTLEMENT PAYMENTS.

      K.    In the event that a settlement check is returned to the SETTLEMENT ADMINISTRATOR as undeliverable, the SETTLEMENT ADMINISTRATOR shall attempt to re-mail the check one time by contacting the FLSA SETTLEMENT COLLECTIVE member using the telephone information provided by such individual to the NOTICE ADMINISTRATOR when the consent form was submitted and/or searching for another address by conducting a skip trace.

      L.    The PARTIES agree that each SETTLEMENT PAYMENT (including MINIMUM SETTLEMENT PAYMENTS) to be issued to each FLSA SETTLEMENT COLLECTIVE member shall be separated into two equal amounts: fifty percent (50%) shall be allocated to the RELEASED CLAIMS for unpaid overtime and other wage-related damages, and fifty percent (50%) shall be allocated to the RELEASED CLAIMS for liquidated

## FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY

damages related to the same claims. To the extent that the amounts cannot be divided exactly equally, the extra penny shall be assigned as wages. Each SETTLEMENT PAYMENT shall consist of a payment to settle all wage claims, which shall be subject to deductions required by law, and a payment to settle liquidated damages and other non-wage claims, which shall not be subject to any deductions and shall be characterized as non-wage income to the recipient. The SETTLEMENT ADMINISTRATOR will report the wage portion to each FLSA SETTLEMENT COLLECTIVE member on an IRS Form W-2, and the non-wage portion (including the FLSA SETTLEMENT COLLECTIVE member's *pro rata* share of the of the amount approved by the COURT for payment of PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES) on one or more IRS 1099 misc forms.

M.    The SETTLEMENT ADMINISTRATOR shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each FLSA SETTLEMENT COLLECTIVE member and mailing the settlement checks, IRS Form W-2s and IRS 1099 misc forms to each FLSA SETTLEMENT COLLECTIVE member and PLAINTIFFS' COUNSEL.

N.    Each FLSA SETTLEMENT COLLECTIVE member will have one hundred twenty (120) calendar days from the date on which the SETTLEMENT PAYMENTS are mailed to negotiate his or her settlement check(s). If any settlement check is not negotiated in that period of time, that settlement check will be voided, and a stop-payment will be placed on the settlement check. Any individual SETTLEMENT PAYMENTS or portions thereof which remain unclaimed for any reason one hundred twenty (120) calendar days following the mailing of the SETTLEMENT PAYMENT shall be deemed unclaimed. In such event,

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

those FLSA SETTLEMENT COLLECTIVE members will be deemed to have irrevocably waived any right in or claim to a SETTLEMENT PAYMENT (including a MINIMUM SETTLEMENT PAYMENT), but the SETTLEMENT AGREEMENT and release of claims contained therein nevertheless will be binding upon them. Unless otherwise required by the relevant state escheatment laws, one hundred percent (100%) of such net unclaimed funds shall be remitted to DEFENDANT on the date set forth in Section III(J) above. Neither DEFENDANT, DEFENDANT'S COUNSEL, PLAINTIFFS' COUNSEL, the NAMED PLAINTIFF, nor the SETTLEMENT ADMINISTRATOR shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event an FLSA SETTLEMENT COLLECTIVE member notifies the SETTLEMENT ADMINISTRATOR that he or she believes that a settlement check has been lost or stolen, the SETTLEMENT ADMINISTRATOR shall immediately place a stop payment on such check. If the settlement check in question has not been negotiated prior to the stop payment order and one hundred twenty (120) calendar days have not passed since the mailing of the settlement check, the SETTLEMENT ADMINISTRATOR will issue a replacement check.

**IV.    PLAINTIFFS' COUNSEL'S FEES, COSTS, AND EXPENSES AND PLAINTIFFS' SHARE OF MEDIATION EXPENSES**

A.    NAMED PLAINTIFF may make an application to the COURT for an award of attorneys' fees not to exceed **$258,333.33**, or thirty-three and one-third percent (33 and 1/3%) of the MAXIMUM GROSS SETTLEMENT AMOUNT, in addition to expenses or costs (**$57,450.10**) (including notice administration expenses but not including MEDIATION EXPENSES AND SETTLEMENT EXPENSES). Such application shall be filed in connection

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

with or as part of the PLAINTIFFS' unopposed motion for approval of the SETTLEMENT AGREEMENT. DEFENDANT agrees that the requested fees and reimbursement of costs are reasonable, and that it will not oppose PLAINTIFFS' COUNSEL'S application as set forth above.

B.    If the COURT rules that any amount requested by PLAINTIFFS' COUNSEL for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES for purposes of this SETTLEMENT AGREEMENT. Any reduction by the COURT will not change the MAXIMUM GROSS SETTLEMENT AMOUNT and the amount of the reduction will become part of the REVISED GROSS SETTLEMENT AMOUNT.

C.    This SETTLEMENT AGREEMENT is not conditioned on the COURT'S approval of the full amount requested in PLAINTIFFS' COUNSEL'S application for fees, costs and expenses.

D.    Payment of such PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES to PLAINTIFFS' COUNSEL as set forth in this SETTLEMENT AGREEMENT and as may be adjusted by the COURT, shall constitute full satisfaction of any and all obligations, up to and including the FINAL EFFECTIVE DATE, by RELEASED PERSONS to pay any person, attorney, or law firm (including but not limited to PLAINTIFFS' COUNSEL) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) incurred on behalf of all members of the FLSA SETTLEMENT COLLECTIVE regarding the RELEASED CLAIMS and shall relieve the RELEASED PERSONS of any other claims or liability to any

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

person for any attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) to which any PLAINTIFFS may claim to be entitled on behalf of any members of the FLSA SETTLEMENT COLLECTIVE for this LITIGATION.  Upon payment of PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES hereunder, PLAINTIFFS' COUNSEL and members of the FLSA SETTLEMENT COLLECTIVE shall release RELEASED PERSONS from any and all claims for attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) relating to the RELEASED CLAIMS, up to and including the FINAL EFFECTIVE DATE.  NAMED PLAINTIFF further represents and certify that he is not aware of any liens for attorneys' fees, expenses, or costs existing, filed, or asserted with respect to any of the claims asserted in this LITIGATION.

  E. PLAINTIFFS' COUNSEL shall be paid PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES approved by the COURT by the SETTLEMENT ADMINISTRATOR via electronic means.  Prior to any payment of the amounts designated as PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES and as PLAINTIFFS' share of MEDIATION EXPENSES, PLAINTIFFS' COUNSEL shall provide the SETTLEMENT ADMINISTRATOR with consistent written instructions regarding how the amounts shall be allocated (*e.g.*, which law firm to receive what amount) as well as all information necessary to effectuate such payments (*e.g.*, executed IRS Forms W-9).  The SETTLEMENT ADMINISTRATOR will issue a respective IRS 1099 misc for their award of PLAINTIFFS'

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

COUNSEL'S FEES, COSTS AND EXPENSES, as allocated by PLAINTIFFS' COUNSEL above.

F. Within twenty (20) business days after the FINAL EFFECTIVE DATE, the SETTLEMENT ADMINISTRATOR shall pay PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES approved by the COURT and PLAINTIFFS' share of MEDIATION EXPENSES via electronic means, if the conditions above have been satisfied.

G. The SETTLEMENT ADMINISTRATOR will report as income on an IRS Form 1099 misc each FLSA SETTLEMENT COLLECTIVE member's *pro rata* share of the amount approved by the COURT for payment of PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES.

## V. SERVICE PAYMENT

A. NAMED PLAINTIFF may also make an application to the COURT for a one-time SERVICE PAYMENT award to the NAMED PLAINTIFF in recognition of the work and services that said individual contributed to the case including, but not limited to, investigative work, meetings with PLAINTIFFS' COUNSEL, assumption of risks, serving as the representative plaintiff in the collective action, and participation in mediation and related activities. The SERVICE PAYMENT shall not exceed **$5,000**. The final amount of any SERVICE PAYMENT shall be determined by the COURT. If the COURT rules that any amount requested as a SERVICE PAYMENT is excessive and reduces the same, only the reduced amount will be deemed to the SERVICE PAYMENT for purposes of this SETTLEMENT AGREEMENT. Any reduction by the COURT will not change the

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

MAXIMUM GROSS SETTLEMENT AMOUNT and the amount of the reduction will become part of the REVISED GROSS SETTLEMENT AMOUNT.

      B.     The SETTLEMENT ADMINISTRATOR shall mail to NAMED PLAINTIFF, c/o HASSLER KONDRAS MILLER LLP, at 100 Cherry Street, Terre Haute, IN 47807, a check in the amount of the SERVICE PAYMENT approved by the COURT within twenty (20) business days after the FINAL EFFECTIVE DATE.

      C.     The SERVICE PAYMENT shall be treated as non-wage income, and the SETTLEMENT ADMINISTRATOR shall issue an IRS Form 1099 misc to NAMED PLAINTIFF for the SERVICE PAYMENT.

      D.     The SERVICE PAYMENT shall be paid out of the GROSS MAXIMUM SETTLEMENT AMOUNT.

**VI.    RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS**

      A.  <u>Release by FLSA SETTLEMENT COLLECTIVE Members and RELEASING PERSONS</u>. Effective as of the FINAL EFFECTIVE DATE, FLSA SETTLEMENT COLLECTIVE members and all RELEASING PERSONS hereby forever and completely settle, compromise, release, and discharge the RELEASED PERSONS from the following claims:

          1.  any and all claims asserted in the LITIGATION that FLSA SETTLEMENT COLLECTIVE members were not paid for all working time during their employment with DEFENDANT;

          2.  any and all claims for unpaid wages, minimum wages, liquidated damages, retaliation for raising any complaints about wage and hour issues, attorneys' fees, costs and

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

expenses, pre- and post-judgment interest, overtime, or non-payment of wages, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including, but not limited those under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq;*

      3.  any and all claims under the wage and hour laws and regulations of any state(s) or locality in which the RELEASING PERSON resided and were employed during their employment with DEFENDANT including, but not limited to any and all state statutory or common law wage claims, including, but not limited to claims of unjust enrichment, quantum meruit, retaliation for raising any complaints about wage and hour issues, and any and all claims for wages, bonuses, commissions, overtime, vacation pay, severance pay, or any other form of compensation of any kind, any and all claims for failure to reimburse business expenses, any and all claims for failure to provide wage statements, any and all claims for failure to provide any compensation-related notice, and any and all claims for any type of penalties or damages available under the wage and hour laws of the applicable state or locality, or any state common law wage claims, including but not limited to claims for attorneys' fees, costs and expenses, liquidated damages, punitive damages, civil penalties, equitable remedies, and/or pre- or post-judgment interest;

      4.  any and all claims under state and federal law for breach of express contract or labor agreement (for unpaid wages, minimum wage overtime, and/or missed or interrupted meal breaks), implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records;

      5.  any and all claims for benefits or other amounts under any compensation or

21

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

benefit plan, program, arrangement, or agreement based on any alleged failure to pay wages or accrued time off, including but not limited to regular rate, minimum wages or overtime wages;

      6.  any and all wage-and-hour laws or wage-related claims of any kind under any other laws, including retaliation for complaining about unpaid wages, and under any other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations; and

      7.  any and all claims for attorneys' fees, costs and expenses related to the claims identified in Section VI(A)(1)-(6).

    B.  <u>Further Release by Named Plaintiff Corbin Howard:</u>

      1.  In addition to the RELEASED CLAIMS identified in Section VI(A) and VI(A)(1)-(7), effective as of the FINAL EFFECTIVE DATE, NAMED PLAINTIFF voluntarily and with the advice of PLAINTIFFS' COUNSEL, fully and forever releases, acquits, and discharges the DEFENDANT and all RELEASED PERSONS, in their personal individual, official and/or corporate capacities, from all such claims and demands directly or indirectly arising out of or in any way connected with his employment with DEFENDANT; claims or demands related to unpaid wages, overtime, severance pay, salary, bonuses, vacation/paid time off, fringe benefits, expense reimbursements, or any other form of compensation of any kind; claims pursuant to any federal, state or local law, statute, regulation, or cause of action including, but not limited to, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act, the National Labor Relations Act (29 U.S.C. § 151 et seq.), the Equal Pay Act (29 U.S.C. § 206), the Civil

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

Rights Acts (42 U.S.C. § 1981 and § 1988), the Fair Labor Standards Act (29 U.S.C. § 201, et seq.), and other state and local ordinances prohibiting discrimination in employment, and all other laws and regulations relating to employment including but not limited to any claims or allegations brought under any state or district statute or regulation for non-payment of wages, bonuses, or other compensation, tort law; contract law; wrongful discharge; retaliation; discrimination; harassment; fraud; defamation; emotional distress; and breach of the implied covenant of good faith and fair dealing. However, this release does not include any claim for workers' compensation benefits or any claims that, as a matter of law, cannot be waived or released by private agreement.

2.    NAMED PLAINTIFF permanently, unequivocally, and unconditionally waives any and all rights he may now have, may have had in the past, or may have in the future to knowingly seek, obtain or resume employment with DEFENDANT and all RELEASED PERSONS as an employee, consultant, contingent worker, temporary worker, independent contractor, or in any other capacity whatsoever, or to do business for or with DEFENDANT and all RELEASED PERSONS through a third party. NAMED PLAINTIFF agrees never to knowingly apply for, or to accept, employment with DEFENDANT and all RELEASED PERSONS. NAMED PLAINTIFF further agrees that this SETTLEMENT AGREEMENT shall be used as the basis for DEFENDANT and all RELEASED PERSONS not to hire, rehire or retain NAMED PLAINTIFF as an employee, consultant, contingent worker, independent contractor or in any other capacity, whatsoever, after his execution of this Agreement. In the event that NAMED PLAINTIFF is ever mistakenly employed or retained by DEFENDANT or any RELEASED PERSONS, NAMED PLAINTIFF agrees to have his employment

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

terminated with no resulting claim or cause of action against the DEFENDANT or any RELEASED PERSONS, and such mistaken employment shall not be a breach of this SETTLEMENT AGREEMENT. NAMED PLAINTIFF acknowledges and agrees that he has no right to employment or re-employment with DEFENDANT or any RELEASED PERSONS, and that DEFENDANT or any RELEASED PERSONS may legally refuse to employ him.

3. The members of the FLSA SETTLEMENT COLLECTIVE further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages or any other form of relief based on any RELEASED CLAIMS which may arise out of, or in connection with any other individual, union representative, class or any administrative or arbitral remedies pursued by any individual, class/collective, union or federal, state or local governmental agency against the RELEASED PERSONS and up to the date the COURT enters its APPROVAL ORDER. The members of the FLSA SETTLEMENT COLLECTIVE further acknowledge that they are enjoined from pursuing any RELEASED CLAIMS they have, might have or might have had against the RELEASED PERSONS based on any act or omission up to the date the COURT enters its APPROVAL ORDER.

C. <u>No Assignment</u>: NAMED PLAINTIFF, for himself and on behalf of the members of the FLSA SETTLEMENT COLLECTIVE, represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the LITIGATION, or any related

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

action.

D.  All members of the FLSA SETTLEMENT COLLECTIVE will be bound by the terms and conditions of this SETTLEMENT AGREEMENT, APPROVAL ORDER, the FINAL JUDGMENT, and the releases set forth herein.

## VII.    MEDIA AND CONFIDENTIALITY OBLIGATIONS

A.       Prior to the FINAL EFFECTIVE DATE, NAMED PLAINTIFF, OPT-IN PLAINTIFFS, and PLAINTIFFS' COUNSEL shall not (1) issue a press release or otherwise notify the media about this SETTLEMENT AGREEMENT or any of the terms contained therein; or (2) advertise any of the terms of the SETTLEMENT AGREEMENT through written, recorded or electronic communications.  During this period, to the extent NAMED PLAINTIFF, OPT-IN PLAINTIFFS, or PLAINTIFFS' COUNSEL is contacted by the media about the SETTLEMENT AGREEMENT or its terms, they shall be permitted to respond to such inquiries by stating that the PARTIES have reached a settlement agreement subject to final court approval, and that NAMED PLAINTIFF OPT-IN PLAINTIFFS, and PLAINTIFFS' COUNSEL believe they have reached a fair and reasonable settlement of the disputed claims.    NAMED PLAINTIFF, OPT-IN PLAINTIFFS, and PLAINTIFFS' COUNSEL may not disclose any of the specific terms of the SETTLEMENT AGREEMENT. As to OPT-IN PLAINTIFFS, substantially similar directives will be included in a cover letter and the proposed Order. DEFENDANT acknowledges and agrees that because the members of the FLSA SETTLEMENT COLLECTIVE are so numerous, it is impossible or impractical for either NAMED PLAINTIFF or PLAINTIFFS' COUNSEL to be responsible for policing compliance of this provision as to PLAINTIFFS, and that any breach by an OPT-IN

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

PLAINTIFF is not a breach of the SETTLEMENT AGREEMENT as to any other PARTY. In the event of such a breach, Defendant may pursue any remedies against the breaching OPT-IN PLAINTIFF, as provided in Section VII(C).

      B.    After the FINAL EFFECTIVE DATE, NAMED PLAINTIFF and OPT-IN PLAINTIFFS agree that they are only permitted to state that the PARTIES reached a fair and reasonable settlement of the disputed claims. As to OPT-IN PLAINTIFFS, substantially similar directives will be included in the cover letter. DEFENDANT acknowledges and agrees that because the members of the FLSA SETTLEMENT COLLECTIVE are so numerous, it is impossible or impractical for either NAMED PLAINTIFF or PLAINTIFFS' COUNSEL to be responsible for policing compliance of this provision as to PLAINTIFFS, and that any breach by an OPT-IN PLAINTIFF is not a breach of the SETTLEMENT AGREEMENT as to any other PARTY. In the event of such a breach, Defendant may pursue any remedies against the breaching OPT-IN PLAINTIFF, as provided in Section VII(C). NAMED PLAINTIFF agrees and understands that to the extent that PLAINTIFFS' COUNSEL are contacted by the media about the SETTLEMENT AGREEMENT, litigation theories, or facts regarding the LITIGATION, they shall only be permitted to respond to such inquiries by stating the PARTIES reached a fair and reasonable settlement of the disputed claims that they have "no comment." In addition, NAMED PLAINTIFF agrees and understands that to the extent that PLAINTIFFS' COUNSEL identify the PARTIES' settlement on their web site or in any marketing material, they shall only refer to DEFENDANT as "a manufacturer," and shall neither identify DEFENDANT by name nor identify the DEFENDANT in such a way that a member of the public could readily identify DEFENDANT as a party to the SETTLEMENT

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

agreement. Nothing in this SETTLEMENT precludes PLAINTIFFS' COUNSEL from using anything that is on the public docket in future court proceedings. Additionally, PLAINTIFFS' COUNSEL may disclose the specific terms of the SETTLEMENT AGREEMENT to the extent necessary to respond to inquiries from members of any of the FLSA SETTLEMENT COLLECTIVE regarding the proposed settlement and may disclose the terms of the SETTLEMENT AGREEMENT in seeking approval of the SETTLEMENT AGREEMENT with the COURT.

C.    A "breach" of the Media and Confidentiality Obligations is any disclosure by the NAMED PLAINTIFF, OPT-IN PLAINTIFFS, or PLAINTIFFS' COUNSEL of the terms or conditions of the SETTLEMENT AGREEMENT beyond those permitted by Section VII. In the event of any such breach or threatened breach, DEFENDANT shall, in addition to any other remedies available to it, be entitled to seek a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining the PARTY from any actual or threatened breach. The PARTIES agree that in the event of a breach by the NAMED PLAINTIFF of the Media and Confidentiality Obligations in Section VII, DEFENDANT will be entitled to liquidated damages in the amount of $5,000 for a breach upon proof of breach.

## VIII.  BINDING EFFECT

All members of the FLSA SETTLEMENT COLLECTIVE will be bound by the terms and conditions of this SETTLEMENT AGREEMENT, the APPROVAL ORDER, the FINAL JUDGMENT, and the releases set forth herein; and will be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the settlement.

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

IX.    **SETTLEMENT ADMINISTRATION**

A.    PLAINTIFFS' COUNSEL will engage RG/2, LLC to be the SETTLEMENT ADMINISTRATOR and request that the COURT appoint RG/2, LLC as the SETTLEMENT ADMINISTRATOR as part of the unopposed Motion for an APPROVAL ORDER and entry of a FINAL JUDGMENT.

B.    The SETTLEMENT EXPENSES are to be paid from the MAXIMUM GROSS SETTLEMENT AMOUNT.   Within twenty (20) business days following the FINAL EFFECTIVE DATE, the SETTLEMENT EXPENSES amount shall be paid to the SETTLEMENT ADMINISTRATOR from the QUALIFIED SETTLEMENT FUND.

C.    The SETTLEMENT ADMINISTRATOR will perform all of the administrative duties assigned herein, including: (1) submitting a flat fee, all-inclusive budget to counsel for the PARTIES for their approval before performing any claims services; (2) calculating the REVISED GROSS SETTLEMENT AMOUNT; (3) calculating the SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS) for each member of the FLSA SETTLEMENT COLLECTIVE; (4) copying and printing the APPROVAL ORDER and cover letter substantially in the form of Exhibit 1 for mailing to all FLSA SETTLEMENT COLLECTIVE members; (5) copying counsel for all PARTIES on material correspondence and promptly notifying all counsel for the PARTIES of any material requests or communications made by any PARTY; (6) mailing a SETTLEMENT PAYMENT (including, if applicable, a MINIMUM SETTLEMENT PAYMENT) and SERVICE PAYMENT (if applicable) in accordance with the terms of Sections III(I) and V(B) above, as well as a copy of the APPROVAL ORDER and cover letter substantially in the form of Exhibit 1, to FLSA

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

SETTLEMENT COLLECTIVE members; (7) electronically transferring PLAINTIFFS' COUNSEL'S FEES COSTS, AND EXPENSES in accordance with the SETTLEMENT AGREEMENT; (8) referring to counsel for the PARTIES all inquiries by members of the FLSA SETTLEMENT COLLECTIVE regarding matters not within the SETTLEMENT ADMINISTRATOR'S duties specified herein, except that any correspondence from members of the FLSA SETTLEMENT COLLECTIVE that is directed to PLAINTIFFS' COUNSEL but is received by the SETTLEMENT ADMINISTRATOR shall be provided solely to PLAINTIFFS' COUNSEL; (9) promptly apprising counsel for the PARTIES of the activities of the SETTLEMENT ADMINISTRATOR; (10) maintaining adequate records of its activities, including the dates of the mailing of SETTLEMENT PAYMENTS, returned mail and other communications and attempted written or electronic communications with members of the FLSA SETTLEMENT COLLECTIVE; (11) confirming in a declaration its completion of the administration of the SETTLEMENT AGREEMENT; (12) timely responding to communications from the PARTIES or their counsel; (13) escheating non-negotiated checks to the appropriate state agency, to the extent required by applicable law; (14) calculating DEFENDANT'S share of EMPLOYER-PAID PAYROLL TAXES; (15) performing all tax reporting duties required by federal, state, or local law or this SETTLEMENT AGREEMENT; (16) ensuring that FLSA SETTLEMENT COLLECTIVE members and PLAINTIFFS' COUNSEL are provided with IRS FORM W-2s and IRS 1099 misc forms as appropriate; (17) opening and administering a QUALIFIED SETTLEMENT FUND, to which DEFENDANT shall electronically transfer an amount equal to the MAXIMUM GROSS SETTLEMENT AMOUNT – the QUALIFIED SETTLEMENT FUND shall be

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

interest bearing, to the extent permitted by applicable law; (18) opening up the QUALIFIED SETTLEMENT FUND at least five (5) business days prior to the date on which the QUALIFIED SETTLEMENT FUND is to be funded by DEFENDANT; (19) remitting to DEFENDANT all amounts required under the terms of the SETTLEMENT AGREEMENT; (20) protecting FLSA SETTLEMENT COLLECTIVE members' personal data, including Social Security numbers, from public disclosure; (21) maintaining reasonable administrative, physical, and technical controls that will protect the confidentiality, security, integrity, and availability of personal data of the members of the FLSA SETTLEMENT COLLECTIVE; (22) delivering to DEFENDANT'S COUNSEL a file type sent by any secure file method transfer approved by DEFENDANT'S COUNSEL and PLAINTIFFS' COUNSEL containing all FLSA SETTLEMENT COLLECTIVE member data, including signed opt-in consent forms, information relating to the mailing of SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS); (23) maintaining all records, electronic or otherwise, relating to the administration of this SETTLEMENT AGREEMENT, for a period of three (3) years after the date of FINAL JUDGMENT; (24) such other tasks contained in the SETTLEMENT AGREEMENT; and (25) such other tasks as the PARTIES mutually agree.

      D.    PLAINTIFFS' COUNSEL and DEFENDANT'S COUNSEL have the right to review and approve any documents to be mailed by the SETTLEMENT ADMINISTRATOR prior to their mailing, and the SETTLEMENT ADMINISTRATOR may not mail any documents without first receiving written approval to send the documents from PLAINTIFFS' COUNSEL and DEFENDANT'S COUNSEL.

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

**X.     TERMINATION OF THE SETTLEMENT AGREEMENT**

A.    Grounds for Settlement Termination:  This SETTLEMENT AGREEMENT may be terminated by NAMED PLAINTIFF or DEFENDANT if the COURT declines to enter an APPROVAL ORDER, or FINAL JUDGMENT substantially in the form submitted by the PARTIES, or the SETTLEMENT AGREEMENT does not become final for any other reason, or a Court of Appeals reverses the entry of an APPROVAL ORDER or FINAL JUDGMENT, or the SETTLEMENT AGREEMENT does not remain intact in all material respects following the exhaustion of the appellate process (if any).

B.    Procedures for Termination:  To terminate this SETTLEMENT AGREEMENT on one of the grounds specified above, the terminating PARTY (*i.e.*, through PLAINTIFFS' COUNSEL or DEFENDANT'S COUNSEL) shall first give written notice to the opposing Counsel no later than:

     1.    Fifteen (15) business days after the COURT acts; or

     2.    Fifteen (15) business days after the reversal or modification by the Court of Appeals of the APPROVAL ORDER and/or FINAL JUDGMENT.

The PARTIES agree that upon such notice by either PARTY, the PARTIES will return to mediation with MEDIATOR and continue negotiating in good faith to resolve any differences until the MEDIATOR declares an impasse after making at least one MEDIATOR'S proposal.

C.    Effect of Termination:  In the event that this SETTLEMENT AGREEMENT is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the LITIGATION is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any COURT:

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

1.      The SETTLEMENT AGREEMENT shall be terminated and shall have no force or effect, and no PARTY shall be bound by any of its terms;

2.      In the event the SETTLEMENT AGREEMENT is terminated, DEFENDANT shall have no obligation to make any payments to any PARTY, PLAINTIFF, OPT-IN PLAINTIFFS, member of the FLSA SETTLEMENT COLLECTIVE, or PLAINTIFFS' COUNSEL, except that the PARTIES shall be jointly responsible (*i.e.*, each PARTY will be responsible for fifty percent (50%) of fees, costs and expenses due) for (a) paying the SETTLEMENT ADMINISTRATOR for services rendered up to the date the SETTLEMENT ADMINISTRATOR is notified that the SETTLEMENT AGREEMENT has been terminated, and (b) paying MEDIATION EXPENSES.

3.      The APPROVAL ORDER, and/or FINAL JUDGMENT, including any order of collective certification, shall be vacated;

4.      The SETTLEMENT AGREEMENT and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the PARTIES, all of whom shall be restored to their respective positions in the action prior to the settlement; and

5.      Neither this SETTLEMENT AGREEMENT, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the LITIGATION or any other action for any purpose whatsoever.

6.      DEFENDANT reserves the right to oppose class and/or collective action certification, and move to decertify any FLSA collective action, should the

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

SETTLEMENT AGREEMENT not become final.

**XI.    LIMITATION ON PARTIES' USE OF THE SETTLEMENT TO SUPPORT CLASS OR CONDITIONAL CERTIFICATION FOR WAGE CLAIMS**

None of the NAMED PLAINTIFF, the OPT-IN PLAINTIFFS, PLAINTIFFS' COUNSEL, DEFENDANT or DEFENDANT'S COUNSEL shall use: (1) the fact of this settlement of the RELEASED CLAIMS; (2) the terms of this SETTLEMENT AGREEMENT; or (3) any information, data or documents exchanged in connection with this settlement of the RELEASED CLAIMS or the PARTIES' Confidential Mediation Agreement, to support or oppose any Section 216(b) Motion For Conditional Certification under the FLSA or any Federal Rule of Civil Procedure 23 Motion For Class Certification on claims asserted in the LITIGATION or in any other such action. Specifically, the NAMED PLAINTIFF, the OPT-IN PLAINTIFFS, and PLAINTIFFS' COUNSEL agree that they will not argue, in seeking conditional certification of an FLSA collective or the Federal Rule of Civil Procedure 23 certification of a putative state law class on claims asserted in the LITIGATION or in any other such action, that a putative collective is similarly situated or appropriate for class treatment because DEFENDANT agreed to settle the RELEASED CLAIMS on a collective and/or class basis, nor shall DEFENDANT argue, in opposing conditional certification of an FLSA collective or the Federal Rule of Civil Procedure 23 certification of a putative state law class on claims asserted in the LITIGATION or in any other such action, that a putative collective is not similarly situated or appropriate for class treatment because DEFENDANT agreed to settle the RELEASED CLAIMS on a collective and/or class basis.

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

## XII.    PARTIES' AUTHORITY

A.      The signatories hereby represent that they are fully authorized to enter into this SETTLEMENT AGREEMENT and bind the PARTIES hereto to the terms and conditions hereof.

B.      NAMED PLAINTIFF acknowledges that he will seek COURT approval of this SETTLEMENT AGREEMENT such that it will bind himself and OPT-IN PLAINTIFFS to all terms set forth in this SETTLEMENT AGREEMENT.

C.      It is agreed that because the members of the FLSA SETTLEMENT COLLECTIVE are so numerous, it is impossible or impractical to have each member of the FLSA SETTLEMENT COLLECTIVE execute the SETTLEMENT AGREEMENT. The APPROVAL ORDER will advise all members of the FLSA SETTLEMENT COLLECTIVE of the binding nature of the release, and that the release will have the same force and effect upon members of the FLSA SETTLEMENT COLLECTIVE as if the SETTLEMENT AGREEMENT were executed by each member of the FLSA SETTLEMENT COLLECTIVE.

## XIII.   MUTUAL FULL COOPERATION

The PARTIES agree to fully cooperate with each other to accomplish the terms of the SETTLEMENT AGREEMENT, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the SETTLEMENT AGREEMENT. The PARTIES to the SETTLEMENT AGREEMENT shall use reasonable efforts, including all efforts contemplated by the SETTLEMENT AGREEMENT and any other reasonable efforts that may become necessary by order of the

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

COURT, or otherwise, to effectuate the SETTLEMENT AGREEMENT and the terms set forth herein. NAMED PLAINTIFF shall, with the assistance and cooperation of DEFENDANT, take reasonable steps to secure the COURT'S final approval of the SETTLEMENT AGREEMENT.

## XIV. NOTICES

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the NAMED PLAINTIFF AND OPT-IN PLAINTIFFS:

Hans Nilges
NILGES DRAHER LLC
7266 Portage Street, N.W., Suite D
Massillon, OH 44646
hans@ohlaborlaw.com

Robert P. Kondras, Jr.
HASSLER KONDRAS MILLER LLP
100 Cherry Street
Terre Haute, IN 47807
kondras@hkmlawfirm.com

To DEFENDANT:

Lisa A. Schreter
LITTLER MENDELSON, P.C.
3424 Peachtree Road, N.E., Suite 1200
Atlanta, GA 30326
lschreter@littler.com

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

## XV.    DESTRUCTION OR RETURN OF EVIDENCE

Upon distribution of all settlement funds, PLAINTIFFS' COUNSEL shall destroy or return all documents and data produced by DEFENDANT during the course of the Litigation.

## XVI.    CONSTRUCTION AND INTERPRETATION

A.    The PARTIES hereto agree that the terms and conditions of the SETTLEMENT AGREEMENT are the result of lengthy, intensive, arms-length negotiations among the PARTIES, with the assistance of a highly qualified neutral MEDIATOR, and the SETTLEMENT AGREEMENT shall not be construed in favor of or against any PARTY by reason of the extent to which any PARTY or his or its counsel participated in the drafting of the SETTLEMENT AGREEMENT.

B.    Paragraph titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this SETTLEMENT AGREEMENT or an of its provisions.  Each term of this SETTLEMENT AGREEMENT is contractual and not merely a recital.

C.    This SETTLEMENT AGREEMENT shall be subject to, governed and construed and enforced in accordance with the laws of the State of Indiana and subject to the continuing jurisdiction of the United States District Court for the Southern District of Indiana. The PARTIES agree that the COURT shall retain jurisdiction to enforce the terms of this SETTLEMENT AGREEMENT unless specifically set forth otherwise herein.

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

## XVII.  FORM AND CONTENT RESOLUTION

A.     The PARTIES agree they must reach agreement on the form and content of the SETTLEMENT AGREEMENT, the proposed APPROVAL ORDER, the Unopposed Motion for Approval, and cover letter attached as Exhibit 1.

B.     The PARTIES agree that in the event they dispute and reach impasse as to any of the settlement terms or the form and content of any documents necessary to effectuate the SETTLEMENT AGREEMENT, or APPROVAL ORDER that cannot be resolved among the PARTIES themselves with the assistance of the SETTLEMENT ADMINISTRATOR, any and all such disputes may be submitted to MEDIATOR Hunter Hughes, Esq. for final and binding arbitration using the executed version of the PARTIES' "Summary of Certain Terms of Proposed Settlement" as a guide for his award.  The PARTIES agree to equally divide the fees and expenses of Mr. Hunter for such arbitration in the event his services are necessary to finalize the SETTLEMENT AGREEMENT or the proposed APPROVAL ORDER, but the PARTIES shall bear their own expenses for attorneys' fees, expenses and costs in connection therein.

## XVIII. INTEGRATION CLAUSE

This SETTLEMENT AGREEMENT sets forth the entire agreement between the PARTIES hereto, excepting the PARTIES' Confidential Mediation Agreement.   The SETTLEMENT AGREEMENT supersedes the SUMMARY OF CERTAIN TERMS OF PROPOSED SETTLEMENT.

## XIX.  BINDING ON ASSIGNS

This SETTLEMENT AGREEMENT shall be binding upon and inure to the benefit of

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

the PARTIES and their respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

## XX.   NO ADMISSION OF LIABILITY

The PARTIES expressly recognize and agree that entering into this SETTLEMENT AGREEMENT does not in any way constitute an admission of liability or any wrongdoing or concession by any PARTY regarding any claim or legal theory.

## XXI.   MODIFICATION

No rights hereunder may be waived or modified except in a writing signed by duly authorized representatives of the PARTIES.

## XXII.   ENFORCEMENT OF THE SETTLEMENT AGREEMENT

A.     In the event a PARTY seeks to enforce the terms of this SETTLEMENT AGREEMENT or to collect on any payments due under the terms of this SETTLEMENT AGREEMENT, notice must be mailed to opposing counsel as provided in Section XIV. After receipt of notice, the PARTIES shall meet and confer for (10) calendar days in a good faith attempt to resolve the matter.  In the event those efforts are unsuccessful and one or more of the PARTIES attempts to institute any legal action or other proceeding against any other PARTY or PARTIES to enforce the provisions of this SETTLEMENT AGREEMENT, or to declare rights and/or obligations under this SETTLEMENT AGREEMENT, or to collect on any payments due under the terms of this SETTLEMENT AGREEMENT, the prevailing party in such an enforcement action may be awarded reasonable attorneys' fees, expenses, and costs.

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

## XXV.  COUNTERPARTS

The SETTLEMENT AGREEMENT may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one SETTLEMENT AGREEMENT, which shall be binding upon and effective as to all PARTIES.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT on _____, 2021:

**NAMED PLAINTIFF**

CORBIN HOWARD

Date: ___12/14/2021_____    By: _____
                                   Corbin Howard
                                   955DAD00BD3340E...

**DEFENDANT**

Date: _____    By: _____
                                   Jason Greene, Chief Legal Officer
                                   Berry Global, Inc.

39

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

## XXV.  COUNTERPARTS

The SETTLEMENT AGREEMENT may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one SETTLEMENT AGREEMENT, which shall be binding upon and effective as to all PARTIES.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT on  Dec. 14,  , 2021:

**NAMED PLAINTIFF**

                                      **CORBIN HOWARD**

Date: _____    By:  _____
                                           Corbin Howard

**DEFENDANT**

Date:  December 14, 2021    By:  _____
                                           Jason Greene, Chief Legal Officer
                                           Berry Global, Inc.

**<u>FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY</u>**

APPENDIX

DEFINITIONS TO SETTLEMENT AGREEMENT AND RELEASE

A.      "APPROVAL ORDER" refers to the order of the COURT (i) granting FINAL JUDGMENT on the RELEASED CLAIMS; (ii) adjudging the terms of the SETTLEMENT AGREEMENT to be fair, reasonable and adequate, and directing consummation of its terms and provisions; (iii) approving NAMED PLAINTIFF'S application for an award of PLAINTIFFS' COUNSEL'S FEES, COSTS, AND EXPENSES; (iv) dismissing the RELEASED CLAIMS from the LITIGATION on the merits and with prejudice and permanently enjoining all members of the FLSA SETTLEMENT COLLECTIVE from prosecuting any RELEASED CLAIMS against DEFENDANT and the RELEASED PERSONS; (v) appointing RG/2, LLC as the SETTLEMENT ADMINISTRATOR; and (vi) asserting and retaining jurisdiction over the claims alleged, the PARTIES in the LITIGATION, and the implementation and administration of this SETTLEMENT AGREEMENT.

B.      "COMPLAINT" means the complaint filed by NAMED PLAINTIFF in the LITIGATION, and which is docketed as ECF No. 1 in the COURT'S docket.

C.      "CONSENT DATE" means (1) for NAMED PLAINTIFF AND EARLY OPT-IN PLAINTIFFS, the date PLAINTIFFS' COUNSEL filed with the COURT their individual consent to opt-in to the LITIGATION, as reflected in the COURT'S docket in this LITIGATION; and (2) for all other OPT-IN PLAINTIFFS, the date their written consent to opt-in to the LITIGATION was received by the NOTICE ADMINISTRATOR, as reflected in the NOTICE ADMINISTRATOR'S records.

D.      "COURT" means the court having jurisdiction of the LITIGATION, at any

40

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

stage, presently the United States District Court for the Southern District of Indiana.

E.    "DEFENDANT" is Berry Global, Inc.

F.    "DEFENDANT'S COUNSEL" refers to Lisa A. Schreter, William F. Allen, and Alan L. McLaughlin of LITTLER MENDELSON, P.C.

G.    "EARLY OPT-IN PLAINTIFFS" include those individuals who filed a consent to opt-in to the LITIGATION, as reflected in the COURT'S docket in this LITIGATION, prior to the issuance of Court-authorized notice of the collective action on July 20, 2021. [See ECF Nos. 12-15, 17-18, 20-22, 26, 30-31, 34, 36].

H.    "EMPLOYER-PAID PAYROLL TAXES" refers to all employer-payroll taxes, including FUTA and the employer's share of FICA and state unemployment, unemployment insurance and back-up withholding (if applicable) payable by DEFENDANT with respect to SETTLEMENT PAYMENTS made under this SETTLEMENT AGREEMENT.

I.    "FINAL EFFECTIVE DATE" refers to the first day after all of the following events and conditions have been met or have occurred: (1) the COURT enters an APPROVAL ORDER; and (2) the time to appeal from the APPROVAL ORDER expires and no Notice of Appeal has been filed or in the event that an appeal is filed, the appellate process is exhausted and the APPROVAL ORDER has remained intact in all material respects.

J.    "FINAL JUDGMENT" refers to the judgment entered by the COURT in conjunction with the APPROVAL ORDER dismissing the LITIGATION on the merits and with prejudice and permanently enjoining all members of the FLSA SETTLEMENT COLLECTIVE from prosecuting against DEFENDANT and the RELEASED PERSONS, any RELEASED CLAIMS.

41

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

K.    "FLSA SETTLEMENT COLLECTIVE" refers to PLAINTIFF AND OPT-IN PLAINTIFFS, all of whom have filed with the COURT a consent to opt-in to the LITIGATION, as reflected in the COURT'S docket in this LITIGATION.

L.    "LITIGATION" means the legal action pending in the United States District Court for the Southern District of Indiana captioned *Howard v. Berry Global, Inc.*, Case No. 13:21-cv-38-RLY-MPB.

M.    "MAXIMUM GROSS SETTLEMENT AMOUNT" is $775,000.00.    The MAXIMUM GROSS SETTLEMENT AMOUNT represents the maximum amount that DEFENDANT would pay pursuant to this SETTLEMENT AGREEMENT if every member of the FLSA SETTLEMENT COLLECTIVE cashed a SETTLEMENT PAYMENT (including a MINIMUM SETTLEMENT PAYMENT), and is inclusive of SETTLEMENT PAYMENTS (including MINIMUM SETTLEMENT PAYMENTS), PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES, MEDIATION EXPENSES as of October 12, 2021, SERVICE PAYMENT, and SETTLEMENT EXPENSES not to exceed **$36,306**.

N.    "MEDIATION EXPENSES" means the reasonable fees, costs, and travel-related expenses incurred by MEDIATOR in performing the services authorized in the Confidential Mediation Agreement and in connection with the mediation and settlement of PLAINTIFFS' CLAIMS as of October 12, 2021.  These amounts shall be included in the MAXIMUM GROSS SETTLEMENT AMOUNT.

O.    "MEDIATOR" means Hunter Hughes of Atlanta, Georgia.

P.    "MINIMUM SETTLEMENT PAYMENT" is $25.00 and refers to the gross minimum amount to be paid to any OPT-IN PLAINTIFF who has filed a consent to join the

42

## FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY

LITIGATION, without regard to (1) whether the individual worked at a plant identified in Attachment A of the PARTIES' Joint Motion for an Ordering Approving Stipulation of Conditional Certification (see ECF No. 37-1); or (2) whether the individual worked for DEFENDANT during the two-year period preceding the date his or her consent was received by the SETTLEMENT ADMINISTRATOR (or, in the case of EARLY OPT-IN PLAINTIFFS, was filed by PLAINTIFFS' COUNSEL). For individuals who worked at DEFENDANT'S Quad Cities plant, the relevant limitations period date ends on May 23, 2020. These amounts shall be included in the MAXIMUM GROSS SETTLEMENT AMOUNT.

Q.      "NAMED PLAINTIFF" refers to Corbin Howard, who was designated by the Court to serve as the Representative Plaintiff for the conditionally certified collective action (see ECF No. 38), and who represents that he has the legal right and authority to seek to act as representatives of the FLSA SETTLEMENT COLLECTIVE, including all OPT-IN PLAINTIFFS, and to make decisions on their behalf concerning PLAINTIFFS' CLAIMS asserted in the LITIGATION, the method and manner of conducting the LITIGATION with respect to PLAINTIFFS' CLAIMS, and the execution of this SETTLEMENT AGREEMENT on behalf of the FLSA SETTLEMENT COLLECTIVE, including all OPT-IN PLAINTIFFS.

R.      "NAMED PLAINTIFF'S CLAIMS" refers to those claims asserted in the LITIGATION.

S.      "NOTICE ADMINISTRATOR" means RG/2, LLC, which was appointed by the COURT to administer the process for issuance of COURT-authorized notice to eligible putative collective members. [See ECF No. 38.]

T.      "OPT-IN NOTICE PERIOD" means the 45-day period (July 20, 2021 –

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

September 3, 2021) during which COURT-authorized notice was issued to the eligible putative collective members by the COURT-appointed NOTICE ADMINISTRATOR and during which recipients could submit a written consent to opt-in to in the LITIGATION. Consents were timely only if received by the NOTICE ADMINISTRATOR by the last day of the period, unless otherwise agreed by DEFENDANT.

U.     "OPT-IN PLAINTIFFS" refers to those individuals who, from the date on which the LITIGATION was commenced through the date the SETTLEMENT AGREEMENT is executed by all PARTIES, filed with the COURT a consent to opt-in to the LITIGATION, as reflected in the COURT'S docket in this LITIGATION. This term includes the EARLY OPT-IN PLAINTIFFS but not NAMED PLAINTIFF Corbin Howard, as well as any individuals who subsequently elected to opt-in to the LITIGATION after receiving notice during the OPT-IN NOTICE PERIOD or SUPPLEMENTAL OPT-IN NOTICE PERIOD.

V.     "PARTIES" refers collectively to the NAMED PLAINTIFF and OPT-IN PLAINTIFFS who have timely asserted claims that they were not paid for all working time, and the DEFENDANT, and, in the singular, refers to any of them, as the context makes apparent.

W.     "PAYMENT ELIGIBILITY PERIOD" means, for NAMED PLAINTIFF and each OPT-IN PLAINTIFF, the period from two years prior to the individual's CONSENT DATE to September 3, 2021, except that for OPT-IN PLAINTIFFS who last worked at the Quad Cities plant, it means the number of weeks of employment with DEFENDANT during the period from two years prior to the individual's CONSENT DATE to May 23, 2020.

X.     "PLAINTIFFS" refers to NAMED PLAINTIFF and the OPT-IN PLAINTIFFS.

**<u>FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY</u>**

Y.      "PLAINTIFFS' COUNSEL" refers to Hans A. Nilges, Shannon M. Draher, and Robi Baishnab of NILGES DRAHER LLC, and Robert P. Kondras, Jr. of HASSLER KONDRAS MILLER LLP.

Z.      "PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES" means the total amount of PLAINTIFFS' COUNSEL'S attorneys' fees in an amount not to exceed **$258,333.33**, thirty-three and one-third percent (33 and 1/3%) of the MAXIMUM GROSS SETTLEMENT AMOUNT, in addition to costs and expenses (**$57,450.10**), for which NAMED PLAINTIFF will apply to the COURT for approval.  This term excludes SETTLEMENT EXPENSES and the PLAINTIFFS' share of MEDIATION EXPENSES.

AA.      "QUALIFIED SETTLEMENT FUND" means the fund to be opened and administered by the SETTLEMENT ADMINISTRATOR in such a manner as to qualify and maintain it as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. Section 1.468B-1, and into which DEFENDANT shall electronically transfer an amount equal to the MAXIMUM GROSS SETTLEMENT AMOUNT in accordance with the terms of the SETTLEMENT AGREEMENT.

BB.      "RELEASED CLAIMS" refers to the released claims set forth in Section VI.

CC.      "RELEASED PERSONS" refers to DEFENDANT as well as to each of its past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of its/their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by the DEFENDANT, divisions,

45

<u>**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**</u>

units, branches and any other persons or entities acting on their behalf, including any entity that was a customer of the DEFENDANT for which any member of the FLSA SETTLEMENT COLLECTIVE performed work or services during their employment with the DEFENDANT.

DD.    "RELEASING PERSONS" means each and every member of the FLSA SETTLEMENT COLLECTIVE and his or her respective agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

EE.    "REVISED GROSS SETTLEMENT AMOUNT" means the MAXIMUM GROSS SETTLEMENT AMOUNT minus the amount approved by the COURT for PLAINTIFFS' COUNSEL'S FEES, COSTS AND EXPENSES, MEDIATION EXPENSES, SERVICE PAYMENT, and SETTLEMENT EXPENSES.    The REVISED GROSS SETTLEMENT AMOUNT shall be allocated among members of the FLSA SETTLEMENT COLLECTIVE who are not receiving a MINIMUM SETTLEMENT PAYMENT.

FF.    "SERVICE PAYMENT" refers to the amount that may be approved by the COURT for payment to PLAINTIFF in an amount not to exceed $5,000.00, less applicable taxes and deductions.    This amount shall be included in the MAXIMUM GROSS SETTLEMENT AMOUNT.

GG.    "SETTLEMENT ADMINISTRATOR" is the third-party claims administration firm mutually agreed upon by the PARTIES, retained by PLAINTIFFS' counsel and appointed by the COURT in the APPROVAL ORDER, which will perform all of the administrative duties assigned by the PARTIES.    The third-party claims administration firm designated by

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

the PARTIES to serve as the SETTLEMENT ADMINISTRATOR is RG/2 LLC.

HH.    "SETTLEMENT AGREEMENT" refers to this Settlement Agreement and Release resolving the claims of PLAINTIFF and OPT-IN PLAINTIFFS in the LITIGATION.

II.    "SETTLEMENT EXPENSES" means the reasonable fees, costs, and expenses incurred by the SETTLEMENT ADMINISTRATOR in performing the services authorized in this SETTLEMENT AGREEMENT.  The SETTLEMENT ADMINISTRATOR will submit a flat fee, all-inclusive budget to counsel for the PARTIES for their approval before performing any claims services, which shall not exceed **$36,306**.  These amounts shall be included in the MAXIMUM GROSS SETTLEMENT AMOUNT.    Under no circumstances shall the SETTLEMENT EXPENSES exceed the flat-fee budget approved by the PARTIES.

JJ.    "SETTLEMENT PAYMENT" refers to the payment to which a member of the FLSA SETTLEMENT COLLECTIVE is entitled pursuant to this SETTLEMENT AGREEMENT, as set forth more fully in Section III(E).

KK.    "SUMMARY OF CERTAIN TERMS OF PROPOSED SETTLEMENT" means the document executed by the PARTIES during and following mediation, with the last signature obtained on October 13, 2021.  It summarizes certain terms of a proposed settlement between the PARTIES, subject to reaching final agreement on the terms of a formal settlement agreement.

LL.    "SUPPLEMENTAL OPT-IN NOTICE PERIOD" means the 45-day period (September 9, 2021 – October 25, 2021) during which COURT-authorized notice was issued by the COURT-appointed NOTICE ADMINISTRATOR to 476 eligible putative collective members who had worked at any of 15 plants during the period July 1 – December 31, 2019

47

**FOR SETTLEMENT AND COMPROMISE PURPOSES ONLY**

and were inadvertently not sent notice during the OPT-IN NOTICE PERIOD, and during which recipients could submit a written consent to opt-in to the LITIGATION. Consents were timely only if received by the NOTICE ADMINISTRATOR by the last day of the period, unless otherwise agreed by DEFENDANT.

4890-8905-6773.1 / 073613-1059

**EXHIBIT 1**

Date

Name
Address
City, ST Zip

re: *Howard v. Berry Global, Inc.* – <u>Collective Action Settlement and Release</u>
    USDC SD IN, Case No. 3:21-cv-00038.

Dear _____:

     As you are aware, you joined the collective action entitled *Howard v. Berry Global, Inc.*, that was filed in the United States District Court, Southern District of Indiana, with Case No. 3:21-cv-00038. The matter was settled through mediation before a third-party neutral. Enclosed you will find your settlement payment along with a copy of the Court Order approving the settlement. We encourage you to read the Court Order. As a result of the Court's Order, you are bound by all terms of the settlement, including the release of claims and the confidentiality provisions.

     Note that you must cash your check within <u>120 days</u> of when it was mailed, otherwise, the check will be voided and you will not receive your payment.  If you believe the check has been lost or stolen, you should immediately contact the Settlement Administrator or Plaintiff's counsel.

     <u>**Payment Amount**</u>:  The funds available for payment to participants under the Settlement Agreement are being divided on a pro rata basis based on the number of eligible full work weeks during each participant's relevant period as defined in the agreement (i.e., two years prior to the filing or submission of your consent form).  If your calculated pro rata share was below $25 because of the limited number of weeks you worked during your relevant work period, settlement funds were reallocated in order to provide you with the minimum gross payment of $25.  Fifty percent of your gross payment will be allocated to wages, from which all deductions required by law will be made and for which an IRS Form W-2 for tax year 2022 will be issued.  The other fifty percent of your gross payment will be allocated to non-wage liquidated damages, from which no deductions will be made and for which an IRS Form 1099 for tax year 2022 will be issued.  You are responsible for completing your own tax returns at the appropriate time.  You should consult a tax professional with any tax related questions you have concerning your settlement payment.

     **Attorneys' Fees:** The Court has approved an amount from the settlement fund for payment of Plaintiff's counsel's attorneys' fees, costs, and expenses.  Some courts hold that your pro rata share of the awarded attorneys' fees must be reported in Box 3 on your Form 1099.  However, this may not actually be taxable to you because this amount may typically be deducted "above the line" on your taxes so that you will effectively not be taxed on your pro rata share of attorneys' fees. You should consult a tax professional with any tax related questions you have concerning such 1099 reporting.

1

**Release of Claims**: By joining the litigation and participating in the settlement, you release Berry Global, Inc. and other related persons and entities from any and all state and federal wage-and-hour laws or wage-related claims as of ____first day after approval____.

**Confidentiality**: By joining the litigation and participating in the settlement, you agree to maintain confidentiality of the settlement, including the amount you were paid, and agree to state that "**the parties reached a fair and reasonable settlement of the disputed claims**." Should you breach confidentiality, Berry Global, Inc. may seek legal remedies against you, including a temporary restraining order and/or preliminary and/or permanent injunction, or other relief. In the event that legal action arises from such a breach, you will be responsible for seeking your own attorney.

**Questions:** If you have additional questions about this letter, the attached approval Order, your payment amount, the release, or confidentiality, then contact the Settlement Administrator at _____.